DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

RYAN REZAEI (CABN 285133)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7534
    FAX: (415) 436-7234
    ryan.rezaei@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 19-CR-0086 WHO |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| OSCAR ROMERO, | |
| Defendant. | |

The United States recommends that the Court sentence the defendant—who faces a guidelines range of 46-57 months—to a not insignificant term of imprisonment for his possession with intent to distribute heroin conviction. Such an imprisonment term would reflect the seriousness of the defendant's offense, promote respect for the law, and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A).

As stated in the Presentence Investigation Report, the defendant was caught with two large packages of heroin. PSR, ¶ 14. The heroin weighed 936.6 grams, almost a kilogram. *Id.* Following his arrest, the defendant admitted that he was supposed to deliver the heroin to an individual who turned out to be a confidential source and that he was supposed to receive $36,000 in exchange for the heroin. *Id.* at ¶ 18.

U.S. SENTENCING MEMORANDUM
19-CR-0086 WHO      1

Drug dealers typically do not entrust tens of thousands of dollars' worth of drugs to just anyone. Instead, they entrust those quantities of drugs to people they know, to people they trust. These people sometimes include family members, but more typically they include individuals with whom the drug dealer has worked on prior occasions. In this more typical scenario, the drug dealer might start off by giving the individual—often called a "runner"—just a few ounces of drugs to deliver to a customer. As the runner builds a reputation for himself, the drug dealer will entrust the runner with larger, more valuable quantities of drugs.

Nothing in this case indicates the defendant was related to the drug dealer, meaning the defendant and his drug dealer fit the more typical arrangement described above: the defendant was entrusted with $36,000 worth of drugs because he had worked with the drug dealer on prior occasions. This conclusion is corroborated by the defendant's own admissions. During a call between the confidential source and the defendant, the confidential source asked if the drug source of supply told the defendant the drug deal was going to be for "five" kilograms of heroin. PSR, ¶ 9. The defendant said he only had "two" with him and that he only *picks up and delivers*, indicating the defendant had delivered drugs for the source of supply on other occasions. *Id.*

Of course, the fact that the defendant was a runner—and not a source of supply—weighs in favor of a lesser sentence. So do the defendant's lack of criminal history and good behavior while on pre-trial release. But the defendant's *motive* for committing the crime weighs in favor of a higher sentence: he committed this crime not to support a drug addiction, but instead to make money.

The amount of drugs the defendant possessed—almost a kilogram—also weighs in favor of a higher sentence. Heroin is commonly sold and ingested at the gram level. It is also typically "cut"—in other words, diluted with other substances—by the time it reaches the street-level. So, for example, a drug dealer might take an "eight-ball" (3.5 grams) of pure heroin and mix it with seven grams of another substance. By diluting the heroin in this fashion, the dealer has tripled the number of eight-balls he can sell to customers: whereas before he could sell only a single eight-ball of pure heroin, now he can sell three eight-balls of a diluted substance containing heroin. Although the substance the drug dealer sells is no longer pure heroin, significantly, by cutting the heroin, the dealer can peddle the drug to a larger customer base, adversely affecting an even greater number of drug users, and by extension, their

families.

Assuming for the defendant's sake that the heroin in this case was not going to be diluted (which is uncommon) and given that a typical heroin "dose" is about one gram,[1] the defendant is responsible for no fewer than 936 doses of heroin hitting the streets. (The number of would be far higher if the heroin were cut.) The following are photographs of the heroin the defendant possessed:



Drug dealers are able to commit their crimes only because there are runners out there who are willing to deliver drugs for them. The defendant was one such runner. And he committed this crime not to support an addiction, but for money. He is responsible for a significant quantity of heroin and he has committed this crime on other occasions. The Court should impose a not insignificant imprisonment term to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. Satisfying these factors with such an imprisonment term is especially important in a city

//
//
//
//
//
//

---

[1] The effect of the "high" largely depends on whether that one gram has been diluted with a cutting agent or not.

like San Francisco, where the opioid crisis is only getting worse: just a few weeks ago, the *San Francisco Chronicle* reported that the number of fentanyl and heroin overdoses in San Francisco more than doubled in 2019.[2]

DATED:  February 13, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

_____/S/_____
RYAN REZAEI
Assistant United States Attorney

---

[2] *See* Evan Sernoffsky and John King, *Fentanyl, heroin overdoses in San Francisco more than doubled in 2019*, San Francisco Chronicle (last updated Jan. 28, 2020, 1:44 p.m.), https://www.sfchronicle.com/bayarea/article/Fentanyl-heroin-overdoses-in-San-Francisco-more-14993628.php.